# CHARLESTON.

Charles C. MacKubin v. Public Service Commission.

Submitted September 5, 1923.     Decided February 26, 1924.

1. Commerce—*Railway May be Required to Stop Interstate Trains at Particular Station.*

   A state may, by legislative enactment or through the instrumentality of its public service commission, require a railway company to stop its interstate trains at a particular station when adequate local facilities so require.     (p. 547).

2. Public Service Commissions—*Findings of Public Service Commission Supported by Sufficient Evidence, Not Disturbed.*

   Findings of fact by the public service commission, when based on evidence to support them, will not be disturbed by this court.     (p. 548).

3. Railroads—*Public Service Commission's Order Discontinuing Stops of Through Trains Held Binding on Court.*

   Where the facts found by the public service commission fail to show that a railroad station is not adequately served by local trains stopping there, though the stopping of through trains may be more convenient to the public traveling to and from such station, this court will not suspend the order of the commission authorizing the discontinuance of such stops or refusing to direct such trains to be stopped at such station.     (p. 549).

Petition for suspension of order of Public Service Commission.

Original proceedings by Charles C. MacKubin against the Public Service Commission. On petition for suspension of an order of defendant.

*Affirmed.*

*J. H. Meek,* for petitioner.

*R. E. McCabe, Lucian H. Cocke, Jr.,* and *John H. Holt,* for respondent Norfolk & W. Ry. Co.

Miller, Judge:

In March, 1921, the petitioner filed with the State Public Service Commission his petition, alleging that the Norfolk & Western Railway was not fulfilling its public duty to furnish adequate passenger service at the station of Glenhayes, in Wayne County, in that its trains Nos. 15 and 16 did not stop at that point to receive and discharge passengers. By an order subsequently entered, the said railway company was directed to stop its train No. 15 at said station for the purpose of receiving passengers holding tickets to Kenova and points west. Upon a final hearing of the case, on motion of the railway company, it was authorized to discontinue said station as a stopping place for train No. 15; and the case was stricken from the docket. From this order of the commission, petitioner has appealed, praying that this court require the said railway company to stop its trains Nos. 15 and 16 at Glenhayes for the purpose of receiving and discharging passengers.

The two trains in question are engaged in interstate commerce, No. 15 running from Norfolk, Virginia, to Columbus, Ohio, and No. 16 from Columbus to Norfolk. There are two other through trains between Norfolk and Columbus, No. 3 west bound and No. 4 east bound, neither of which stops at Glenhayes, each passing that point between midnight and 2:00 A. M. Local trains No. 29 west bound and No. 8 east bound stop at this station

It has been held by the Supreme Court of the United States that: "It is competent for a State to require local facilities, even to the stoppage of interstate trains or the re-arrangement of their schedules." *C. B. & Q. R. R. Co.* v. *Wisconsin Railroad Commission,* 237 U. S. 220; *St. Louis & S. F. Ry. Co.* v. *Public Service Commission,* 254 U. S. 535. So the question presented to the commission and to us on appeal, is whether trains Nos. 29 and 8 referred to above furnish adequate facilities for the residents of Glenhayes and vicinity.

The public service commission found, from the evidence before it, that the population of Glenhayes and vicinity is not over two to three hundred; that there are not over thirty houses located there, the majority of them two-room houses; that there are no manufacturing concerns at that point; that while there was some evidence on one of the earlier hearings of one coal mine being operated sporadically in the vicinity, there was no such evidence on the final hearing. In *Norfolk & Western Railway Company* v. *Public Service Commission,* 82 W. Va. 408, we held that findings of fact by the public service commission based on evidence to support them will not be reviewed by this court; and we think the evidence in this case is sufficient to warrant the findings of fact made by the commission.

The station of Glenhayes is located on the main line of the N. & W. Railway, 35 miles southeast of Kenova, W. Va. Train No. 29 leaves Glenhayes at 5:48 P. M., arriving at Kenova at 7:15; and while passengers for Columbus and Cincinnati would have to lay over at Kenova until train No. 15 at 2:10 A. M. in order to continue their journey by way of the N. & W. Railway, there are connections there with the Baltimore & Ohio Railroad north, and with the main line of the Chesapeake & Ohio east and west. Besides, the figures introduced in evidence show that during a period of five months when train No. 15 was stopped at Glenhayes under the order of the commission only 32 tickets were sold there for points west of Kenova, and that 14 tickets were sold for such points to be used on train No. 29. With these facts in view, we can not say that we would be justified in holding that train No. 15 should be stopped at Glenhayes to accommodate passengers for points west of Kenova.

Train No. 8 leaves Kenova at 6:40 A. M. and passes Glenhayes at 8:03. It is contended that Fort Gay, nine miles northwest of Glenhayes, a town of 4,500 population, including the town of Louisa, Kentucky, just across the state line, is one of the principal trading points for the residents of Glenhayes and vicinity, and that in order to make this trip by trains Nos. 29 and 8, it is necessary for one to remain over night at Fort Gay; but that if trains Nos. 15 and 16 stopped

at Glenhayes, one might leave there at 12:53 P. M. and return at 2:36 P. M. and have one hour and five minutes at Fort Gay for the transaction of business. The figures submitted by the railway company, based on ticket sales during five months when train No. 15 stopped at Glenhayes under the order of the commission, show that during that time 255 persons purchased tickets to Fort Gay for train No. 15, an average of 1.68 per day, while during the same period 282 tickets were sold for train No. 29. We do not think that the evidence on this point would justify us in holding that two interstate trains should be delayed for the transaction of the limited business carried on between these two points, especially when trains Nos. 8 and 29 offer such convenient facilities as they do to reach points east of Glenhayes.

It is said that the present train schedules of the railway company make it very inconvenient for residents of Glenhayes in traveling to and from the town of Wayne, the county seat of Wayne County. Wayne is located on a branch line of the N. & W. Railway extending from Kenova to Naugatuck, a point on the main line 25 miles east of Glenhayes. A local train leaves Kenova each morning at 7:00, arriving at Wayne at 7:58, and at Naugatuck at 10:23: returning it leaves Naugatuck at 3:45 P. M., arriving at Wayne at 6:08 P. M., and at Kenova at 7:10 P. M. Wayne is 25 miles from Kenova and 58 miles west of Naugatuck. Neither train No. 15 or train No. 16 would be of any advantage in making the trip to and return from Wayne by way of Kenova. If train No. 16 stopped at Glenhayes, passengers could leave that point at 2:36 P. M. instead of 8:03 A. M. by train No. 8, a saving in time of six hours and thirty-three minutes. The return trip would be shortened about five hours if train No. 15 stopped at Glenhayes. But there would be no other advantage than the saving of time en route; for in any event one would have to remain in Wayne over night. There is no evidence to show how many residents of Glenhayes visit the county seat, nor that any of them do.

As stated above trains Nos. 15 and 16 are interstate trains, operating between the seaboard and Columbus, Ohio, a distance of about 675 miles, and connecting at Portsmouth, Ohio,

with trains to and from Cincinnati. In view of the findings of the public service commission and the facts in evidence before us, we do not think petitioner has shown such inadequacy of service at Glenhayes that would warrant us in holding the commission to have erred in its order of July 7, 1923, and the same will be affirmed.

*Affirmed.*